**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

    **ANDREW WAYNE GUESS,**                                **CASE NO. 05-55521-NPO**

                  **DEBTOR.**                                                              **CHAPTER 7**

**KEYBANK USA, N.A.**                                                    **PLAINTIFF**

VS.                                                               **ADV. PROC. NO. 10-05006-NPO**

**KIMBERLY R. LENTZ, TRUSTEE**                                  **DEFENDANT**

**MEMORANDUM OPINION GRANTING**
**MOTION FOR JUDGMENT ON THE PLEADINGS,**
**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

      There came on for consideration the Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment (the "Motion") (Adv. Dkt. No. 8)[1] and the Memorandum Brief in Support of Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment (the "Trustee's Brief") (Adv. Dkt. No. 9) filed by Kimberly R. Lentz, chapter 7 trustee (the "Trustee"); KeyBank USA, N.A.'s Response to Trustee's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment (the "KeyBank's Response") (Adv. Dkt. No. 12) and KeyBank USA, N.A.'s Memorandum Brief in Support of its Response to Trustee's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment (the "KeyBank's Response Brief") (Adv. Dkt. No. 13) filed by KeyBank USA, N.A. ("KeyBank"); and the Trustee's Brief in

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding are cited as "(Adv. Dkt. No. ____)"; (2) citations to docket entries in the main bankruptcy case, Case No. 05-55521-NPO, are cited as "(Bankr. Dkt. No. ____)"; and citations to docket entries in adversary proceeding number 06-05058-NPO are cited as "(Adv. No. 06–05058-NPO, Adv. Dkt. No. ____)."

Reply to KeyBank USA, N.A.'s Response to Trustee's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment (the "Trustee's Reply Brief") (Adv. Dkt. No. 14) filed by the Trustee in the above-styled adversary proceeding (the "Lien Adversary"). The Court, having considered the pleadings, the supporting documentation, and the briefs, finds that the Motion should be granted for the reasons set forth below. Specifically, the Court finds as follows:[2]

## Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (K).

## Facts

The following account consists largely of facts that the parties do not dispute, as recited in the Motion by the Trustee and as supplemented by KeyBank in KeyBank's Response. Where the narrative below includes matters for which there are conflicting allegations, the Court has construed the facts in the light most favorable to KeyBank.

1. In August, 2003, the Debtor enrolled in the Professional Pilots' Program ("Pilots' Program") at Vortex Helicopters, Inc. ("Vortex") in Long Beach, Mississippi, as an initial step toward obtaining his commercial helicopter pilot's license. The estimated cost of the flight school was $35,350, based on a ten-month program. However, because most employers require a minimum of 200 hours of flight experience due to insurance requirements, there was an additional estimated expense of $5,100 for more flight hours.

---

[2] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052.

2.      To pay for helicopter flight school, the Debtor executed a promissory note dated July 12, 2003, in favor of KeyBank in the principal amount of $42,000 with payments due monthly beginning March 15, 2005.  From August 18, 2003, to February 23, 2004, KeyBank distributed the loan proceeds by issuing four checks, each in the amount of $10,500 made payable only to the Debtor.  Notably, KeyBank mailed the checks directly to Vortex, which the Debtor then endorsed over to Vortex and which Vortex applied to the Debtor's student account for payment of his tuition and other costs, such as books and use of a helicopter.

3.      The Debtor did not complete his flight training within the estimated ten-month period of time.  Therefore, on July 29, 2004, he requested an additional loan from KeyBank, *via* the Internet, in the principal amount of $28,000.  KeyBank distributed the proceeds from this second loan in increments of $7,000, from July 29, 2004, to December 19, 2004, in the same manner as it did the first loan proceeds.

4.      In June, 2005, the Debtor left the flight school without having completed the Pilots' Program.

5.      The Debtor never made any payments to KeyBank on either of the two loans.

6.      On October 14, 2005, the Debtor filed a voluntary petition for relief (the "Petition") (Bankr. Dkt. No. 1) under chapter 7 of the Bankruptcy Code.  The Trustee[3] was later appointed in the Debtor's bankruptcy case (Bankr. Dkt. No. 44).

7.      On the same date he filed the Petition, the Debtor filed his schedules in which he listed Key Education Resources as a creditor holding an unsecured nonpriority claim in the amount

---

[3] Originally, Samuel J. Duncan was the trustee, but he resigned December 31, 2007, and the Trustee was appointed as his successor (Bankr. Dkt. 43).

of $81,327.83 (Schedule F, Bankr. Dkt. No. 4).  The Debtor did not disclose the existence of a cause of action against Vortex in his original Statement of Financial Affairs (Bankr. Dkt. No. 4).

8. On March 29, 2006, the Debtor filed an Amended Statement of Financial Affairs (Bankr. Dkt. No. 13) in which he listed Guess v. Vortex, Inc. as a civil lawsuit in which he was a party.  He described the status of the suit as "contingent, disputed, and unliquidated."

9. On July 14, 2006, KeyBank initiated the first of two adversary proceedings against the Debtor by filing its Complaint Objecting to Discharge (the "Discharge Adversary") (Adv. No. 06-05058-NPO, Adv. Dkt. No. 1).  KeyBank objected to the discharge of its unpaid loans on the ground they constituted non-dischargeable educational loans within the meaning of § 523(a)(8).[4]

10. On December 29, 2006, KeyBank filed a proof of claim (the "Original Claim") (Claim No. 8-1) in the Debtor's bankruptcy case for an unsecured nonpriority claim for money loaned to the Debtor in the total amount of $81,327.83, including accrued interest.

11. The Debtor employed Michael L. Prewitt ("Prewitt") to represent him in a lawsuit against Vortex and shortly thereafter, on July 11, 2007, filed a complaint against Vortex and others (the "Vortex Lawsuit") in the Circuit Court of Harrison County, Mississippi ("Circuit Court"), seeking damages, *inter alia*, for breach of contract.  Because the record does not include any of the pleadings filed in the Vortex Lawsuit, the Debtor's factual allegations against the defendants in the Vortex Lawsuit are not known in detail.  KeyBank, however, contends that the facts underpinning the Debtor's claim are that Vortex unnecessarily required the Debtor to repeat courses in the Pilot's Program in order to prolong his enrollment there.

---

[4] Hereinafter, all code sections refer to the United States Bankruptcy Code, located at Title 11 of the United States Code, unless specifically noted otherwise.

12. On August 17, 2007, this Court entered an Order Authorizing Employment of Special Counsel (Bankr. Dkt. No. 34) allowing the Trustee to retain Prewitt as special counsel for the Trustee to prosecute the Vortex Lawsuit on behalf of the bankruptcy estate.

13. The parties in the Vortex Lawsuit agreed to settle their dispute subject to the approval of this Court. Accordingly, on November 24, 2009, the Trustee filed a Motion to Approve Settlement ("Motion to Settle") (Bankr. Dkt. No. 62) requesting this Court's approval of the settlement of the Vortex Lawsuit in the amount of $20,000, made payable directly to the Trustee (the "Vortex Settlement").

14. On December 14, 2009, KeyBank filed an Objection to Motion to Approve Settlement ("Objection to Motion to Settle") (Bankr. Dkt. No. 67), in which it did not object to the Vortex Settlement *per se*, but only to the payment of the settlement funds directly to the Trustee.

15. On January 7, 2010, a hearing was held on the Trustee's Motion to Settle and the Objection to Motion to Settle, at which time the Court approved the Vortex Settlement.

16. On January 22, 2010, this Court entered an Agreed Order Approving Settlement (the "Settlement Order") (Bankr. Dkt. No. 71) authorizing the Trustee to accept $20,000 in settlement of the Vortex Lawsuit ("Vortex Settlement Proceeds") and granting KeyBank forty-five (45) days within which to file an adversary proceeding to assert a claim to the Vortex Settlement Proceeds.

17. On February 24, 2010, an Order Approving Attorneys' Fees and Expenses for Special Counsel (Bankr. Dkt. No. 76) was entered, without any objection from KeyBank, authorizing the Trustee to pay Prewitt $10,000 in fees and expenses.

18. In accordance with the Settlement Order, on March 5, 2010, KeyBank filed the Complaint to Establish Extent and Validity of KeyBank USA, N.A.'s Right to Settlement Proceeds

(the "Lien Complaint") (Adv. Dkt. No. 1) initiating the Lien Adversary that is the subject of the Motion. KeyBank asserts that it is entitled to all that remains of the Vortex Settlement Proceeds.

19. The parties settled the Discharge Adversary, and on March 26, 2010, the Court entered an Agreed Final Judgment and Order Granting Plaintiff's Objection to Discharge (Adv. No. 06-05058-NPO, Adv. Dkt. No. 73) allowing KeyBank a non-dischargeable judgment against the Debtor in the amount of $10,000.

20. On April 8, 2010, the Trustee filed the Trustee's Answer to Complaint to Establish Extent and Validity of KeyBank USA, N.A.'s Right to Settlement Proceeds (Adv. Dkt. No. 5) in which the Trustee denies that KeyBank was entitled to the relief sought.

21. On April 9, 2010, the Trustee filed the Trustee's Objection to Claims (Bankr. Dkt. No. 82), in which she objected to the Original Claim on the ground that KeyBank failed to attach adequate documentation and requested that the Court disallow it as a general unsecured claim.

22. On May 18, 2010, KeyBank filed an amended proof of claim (the "Amended Claim") (Claim No. 8-2) in the slightly lower amount of $80,224.44, and attached thereto a copy of the $42,000 promissory note dated July 12, 2003, and copies of documents regarding the second $28,000 loan made one year later. Also on May 18, 2010, KeyBank filed its Response to Trustee's Objection to Claim No. 8-1-KeyBank USA, N.A. (Bankr. Dkt. No. 88) indicating that it had amended the Original Claim to include additional documents evidencing both loans.

23. On May 26, 2010, the Trustee filed the Motion in which she requests judgment on the pleadings or, in the alternative, summary judgment pursuant to Rules 7012 and 7056 of the Federal Rules of Bankruptcy Procedure. The Trustee attached the Affidavit of Kimberly Lentz ("Trustee's Affidavit") in support of the Motion. The Trustee admits that KeyBank has a general

unsecured claim against the estate in the amount of $80,224.44, but points out that KeyBank is only one of eight unsecured creditors and that the total of all of the unsecured claims in the bankruptcy case is $125,105.54. That amount greatly exceeds the amount that the Trustee has on deposit, only $12,527.25, which includes: (1) $10,000 from the Vortex Settlement Proceeds; (2) $2,500 from the settlement of another matter; and (3) $27.25 in accrued interest. The Trustee asks this Court to enter judgment in her favor holding that the Vortex Settlement Proceeds should be distributed on a *pro rata* basis among all the unsecured creditors.

24.     On May 28, 2010, an Agreed Order Sustaining Trustee's Objection to Claims (Bankr. Dkt. No. 93) was entered in the bankruptcy case allowing the Amended Claim in the amount of $80,224.44 as a general unsecured claim.

25.     On June 16, 2010, KeyBank filed KeyBank's Response in which it asserts that a link exists between the "actions of Vortex" and the funds KeyBank loaned to the Debtor, and for this reason, the Court should award KeyBank all of the remaining Vortex Settlement Proceeds pursuant to § 105.[5] See KeyBank's Response ¶ 6. Attached to KeyBank's Response are excerpts from the examination of the Debtor taken pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

## Discussion

It is difficult to discern the precise theory KeyBank advances in support of its reliance on § 105. KeyBank hovers above the provisions of § 105 but fails to land on any specific statutory basis for deviating from the distribution of estate property set forth in § 726(a). In an attempt to locate

---

[5] Section 105(a) provides in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

possible landing zones, the Trustee descends onto the following potential basis for recovery: (1) that the Vortex Settlement Proceeds are held in a constructive trust and are excluded from property of the estate under § 541(d); (2) that the claims of the other unsecured creditors of the estate are equitably subordinated to the Amended Claim under § 510; and (3) that the Amended Claim is entitled to priority treatment under § 507. See Trustee's Brief. KeyBank makes the constructive trust argument its primary landing pad, turns the Trustee's equitable subordination argument into an argument for equitable subrogation, and flies directly past the priority status argument under § 507. See KeyBank's Response Brief at ¶ 21. In her final approach, the Trustee raises for the first time the equitable defense of laches. Trustee's Reply Brief at 4.

**A. Legal Standard**

In the Motion, the Trustee requests judgment on the pleadings pursuant to Rule 7012(c) of the Federal Rules of Bankruptcy Procedure or, in the alternative, summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. Because both parties have presented matters to the Court for consideration outside of the pleadings, the Court will treat the Motion as a motion for summary judgment. See Fed. R. Bankr. P. 7012(d).

Rule 7056 of the Federal Rules of Bankruptcy Procedure makes Rule 56 of the Federal Rules of Civil Procedure governing summary judgment applicable in adversary proceedings. The United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") recently reiterated the standard applicable to motions for summary judgment under Federal Rule of Civil Procedure 56: "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." Versai Mgmt. Corp. v. Clarendon Am. Ins.

Co., 597 F.3d 729, 735 (5th Cir. 2010) (quoting Clark v. Am.'s Favorite Chicken, 110 F.3d 295, 297 (5th Cir.1997)). A party may not "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994)). Summary judgment is "proper if the party opposing the motion fails to establish an essential element of his case." Bradley v. Allstate Ins. Co., 606 F.3d 215, 222 (5th Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). With this standard in mind, the Court analyzes the theories that KeyBank relies upon in support of its claim to the Vortex Settlement Proceeds.

**B. Are the Vortex Settlement Proceeds Property of the Bankruptcy Estate?**

With some limited exceptions, property of a debtor's bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition includes a "cause of action" that a debtor could have raised under applicable state law as of the commencement of the case.[6] Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.), 522 F.3d 575, 584 (5th Cir. 2008). Any proceeds derived from such a cause of action are also property of the estate. See 11 U.S.C. § 541(a)(6); Wischan v. Adler (In re Wischan), 77 F.3d 875, 877 (5th Cir. 1996) (fact that causes of action may have borne fruit in settlement or judgment *after* commencement of the bankruptcy case does not exclude them from bankruptcy estate). Here, the Vortex Settlement Proceeds fall within the definition of property of the Debtor's bankruptcy estate under § 541(a).

---

[6] A claim is defined as a right to payment and includes those rights that are unliquidated, contingent and unmatured. 11 U.S.C. § 104(5)(A). Here, the parties do not dispute that the Debtor's claim against Vortex arose pre-petition.

Recognizing this result, KeyBank argues the applicability of § 541(d) and the constructive trust theory in order to exclude the Vortex Settlement Proceeds from estate property. That section provides that property in which the debtor holds only legal title and not an equitable interest becomes property of the estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). The effect of § 541(d) is to exclude property from the bankruptcy estate when it is subject to a trust properly imposed under state law. Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.), 12 F.3d 426, 436 (5th Cir. 1994); see also 5 Collier on Bankruptcy ¶ 541.28[2] (16th ed. 2010) ("When the existence of a prepetition constructive or resulting trust is established, the assets subject to the trust will typically be found . . . *not* to be property of the estate.") In this way, the remedy of a constructive trust disrupts the priority system set forth in § 726 under which timely-filed general unsecured claims are paid on a *pro rata* basis. If applied here, the remedy of a constructive trust would allow KeyBank to be paid before all the other general unsecured creditors.

In order to benefit from § 541(d), however, KeyBank must establish that it is entitled to a constructive trust in the Vortex Settlement Proceeds under applicable state law and if it does so, must also identify the trust property or must sufficiently trace it if it has been commingled with the recipient's own monies. 5 Collier on Bankruptcy ¶ 541.28. Under Mississippi law,[7] "[a] constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." McNeil v. Hester, 753 So. 2d 1057, 1064 (Miss. 2000). The party seeking to establish a constructive trust must present evidence of substantial overreaching or fraud by clear and convincing evidence.

---

[7] The parties do not dispute that the law of Mississippi governs this Lien Adversary.

Pitchford v. Howard, 45 So. 2d 142, 17 (Miss. 1950); Shumpert v. Tanner, 332 So. 2d 411, 412 (Miss. 1976). Only then may the court create a trust for the benefit of the defrauded party. Lipe v. Souther, 80 So. 2d 471, 471 (Miss. 1955).

KeyBank contends that it has adequately demonstrated a material question of fact as to whether it is entitled to a constructive trust in the Vortex Settlement Proceeds. The creation of the trust, according to KeyBank, is justified because of the "actions of Vortex" when it allegedly prevented the Debtor from completing the Pilots' Program in a timely manner and caused the Debtor to borrow additional funds from KeyBank to pay for more flight training. Moreover, KeyBank claims that Debtor never had possession or control of the loan funds because KeyBank mailed the checks to Vortex and because Vortex, in turn, deposited them into a student account from which it debited the Debtor's expenditures as they were incurred. For this reason, KeyBank insists that the loan proceeds can be traced to the funds in the Debtor's account at Vortex, a portion of which Vortex returned in settlement of the Vortex Lawsuit.

The Trustee maintains that KeyBank cannot justify the imposition of a constructive trust on funds held by the Trustee in the absence of any evidence of fraudulent behavior by the Debtor or the Trustee. Moreover, the connection, if any, between the loan proceeds and the damages recovered from Vortex for breach of contract is insufficient as a matter of law to warrant imposition of a constructive trust for the benefit of KeyBank.

The Court finds KeyBank's position untenable for the reasons maintained by the Trustee. Simply put, KeyBank does not, and cannot, allege that it was the victim of "substantial overreaching or fraud" committed either by the Trustee, the individual who currently holds the funds, by the Debtor, the individual who borrowed the funds, or by Vortex, the entity who eventually received the

funds. The best that KeyBank can show is that it loaned money to a customer who was allegedly the victim of the "actions of Vortex." Yet, "substantial overreaching or fraud" against the trust beneficiary is an essential element for the remedy that KeyBank seeks. This Court is mindful of the fact that the Trustee, not KeyBank, first raised this theory as a potential basis for KeyBank's Lien Adversary. Perhaps this explains why KeyBank itself has not consistently treated the Vortex Settlement Proceeds as trust property but until recently has held itself out as a general unsecured creditor of the bankruptcy estate. For example, KeyBank did not itself initiate a cause of action against Vortex for return of the loan proceeds, did not object to the Trustee's prosecution of the Vortex Lawsuit on behalf of the bankruptcy estate, and did not contest the payment of Prewitt's attorney's fees from the Vortex Settlement Proceeds.

In addition, there is scant evidence that the Vortex Settlement Proceeds represent a refund of any of the loan proceeds advanced by KeyBank to the Debtor. The Trustee sought damages in the Vortex Lawsuit for a variety of claims against multiple defendants. The parties settled the Vortex Lawsuit for $20,000, which is considerably less than the total principal amount that KeyBank loaned the Debtor. There is simply no reasonable basis for this Court to find that the parties earmarked the Vortex Settlement Proceeds as a refund of the loan proceeds provided by KeyBank.

Finally, even if KeyBank has presented sufficient evidence in support of the creation of a trust, it is a stretch for KeyBank to attempt to trace the property by claiming that the Debtor never had possession or control of the loan funds. The Debtor took possession of the checks, if only for a few minutes, when he endorsed them over to Vortex. Indeed, the Debtor had to endorse them because KeyBank made the checks payable only to the Debtor. Also, KeyBank presents scant evidence as to the manner in which Vortex maintained the Debtor's student account. There is no

evidence, for example, that Vortex kept the loan proceeds segregated into a separate trust account for the Debtor's benefit.  In summary, the Court finds that KeyBank has not demonstrated sufficient material facts to show it is entitled to the remedy of a constructive trust so as to preclude summary judgment in favor of the Trustee.

### C. Is KeyBank Entitled to Equitable Subrogation?

The Trustee initially identified equitable subordination under § 510 as a potential ground for recovery by KeyBank, but KeyBank has abandoned that argument[8] and instead has asked this Court to apply the doctrine of equitable subrogation under Mississippi law.  The effect of applying this doctrine would be to substitute KeyBank in place of the Debtor with regard to the Debtor's right to recover the Vortex Settlement Proceeds.  See Robertson v. Sullivan, 59 So. 846, 847 (Miss. 1912).  Therefore, the Court will address only KeyBank's equitable subrogation argument.

This Court recently discussed application of the doctrine of equitable subrogation in the residential loan refinancing context in In re Shavers, 418 B.R. 589, 605 (Bankr. S.D. Miss. 2009).  There, the Court noted that the doctrine applies in Mississippi where a party, who is not a mere volunteer, pays a debt that in good conscience should have been paid by someone else and where application of the doctrine is necessary to prevent injustice or injury to that party.

KeyBank claims equitable subrogation applies here because it provided the funds to the Debtor to pay for the Pilot's Program at Vortex and, therefore, it should step into the shoes of the Debtor to recover the Vortex Settlement Proceeds.  The Court, however, finds that equitable

---

[8] Subsection "D" in KeyBank's Response Brief is titled "Equitable Subordination" but the substance of KeyBank's argument relates almost entirely to equitable subrogation.  Except for the first paragraph where KeyBank defines the doctrine of equitable subordination,  KeyBank does not refer to the term anywhere else.  See KeyBank's Response Brief.

subrogation is not justified under the facts of this case where KeyBank had its own written agreement with the Debtor for repayment of the loan, where KeyBank did not satisfy a pre-existing obligation of the Debtor, and where KeyBank was aware of the risk in loaning the Debtor additional money.  Also, the reduction of assets of the estate from $12,527.25 to $2,527.25 obviously would result in substantial harm to the unsecured creditors of the Debtor's bankruptcy estate if equitable subrogation were applied.  The Court finds that KeyBank has failed to establish any of the elements necessary for application of equitable subrogation as a matter of law.

### D.  Is KeyBank Entitled to Equitable Relief under § 105?

KeyBank implores this Court to exercise its equity powers under § 105 to order the Trustee to pay it the balance of the Vortex Settlement Proceeds.  To do so, however, would require this Court to deviate substantially from the distribution scheme set forth in  § 726(b).  The powers granted by § 105 are not so unlimited as to allow the Court to ignore the substantive provisions of bankruptcy law.  See Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15 (2000) (bankruptcy courts have equitable powers to adjust rights between creditors but are limited to what the Bankruptcy Code provides); Chiasson v. J. Louis Matherne & Assoc. (In re Oxford Mgmt. Inc.), 4 F.3d 1329, 1333-34 (5th Cir. 1993) (court's use of  § 105(a) in deviating from *pro rata* distribution scheme was improper in absence of specific provision of the Bankruptcy Code).  Accordingly, the Court finds that KeyBank is not entitled to relief under § 105 as a matter of law.

### E.  Does the Defense of Laches Apply?

The Trustee raises the affirmative defense of laches for the first time in the Trustee's Reply Brief.  The Court's findings and conclusions regarding the Vortex Settlement Proceeds render it unnecessary for the Court to reach this defense.  But see Clark v. Amoco Prod. Co., 794 F.2d 967,

971 (5th Cir. 1986) (the affirmative defense of laches requires proof of an unreasonable delay in bringing a claim and a detrimental good faith change of position because of the delay).

## Conclusion

The Court concludes that KeyBank has failed to meet its burden of demonstrating that a genuine issue exists as to whether it is entitled to the Vortex Settlement Proceeds. Therefore, the Trustee is entitled to judgment as a matter of law. Accordingly, the Trustee should treat the Amended Claim as a general unsecured claim in accordance with the distribution scheme set forth in § 726.

In accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, the Court will enter a separate order consistent with this Memorandum Opinion.